# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**CARL WATTS**                                                                              **PLAINTIFF**

**v.**                                                                      **No. 3:13CV219-MPM-DAS**

**DR. K. WILLIAMS**
**WARDEN T. OUTLAW**                                                       **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Carl Watts, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Watts alleges that the defendants have not provided adequate medical care for his right leg, right hip, and lower back. The defendants have moved [57], [59] for summary judgment, arguing that Watts has received extensive medical treatment for these conditions, but simply disagrees with the course of treatment. Watts has responded to the motions, and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the instant motions [57], [59] for summary judgment will be granted, and judgment will be entered for the defendants.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066

(1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

Carl Watts had suffered from back problems in the past, and he developed pain in his right hip, right leg, and lower back on May 16, 2013. Watts' Deposition ("Depo.") 56. Defendant Dr. Williams examined and treated Watts for these complaints, arranging for x-rays and an MRI of Watts' hips to

determine the source of his pain. *Id.* On May 29, 2013, Dr. Williams found that the imaging studies revealed no problems with Watts' hips. *Id.* Given these results, Dr. Williams did not deem it necessary for further examination or treatment. Depo. 56-57, 61-62, MDOC medical records 529. Watts' deposition testimony and his voluminous medical records show that on June 6, 2013, within days of his last visit with Dr. Williams, he saw Dr. Gregory Stallworth because of continued back and leg pain. Depo. 57-58. Though Watts did not realize it at the time, Drs. Williams and Stallworth had contracted to coordinate their efforts in treating inmates at the Marshall County Correctional Facility. Affids. of Drs. Williams and Stallworth. Dr. Stallworth ordered an EMG and nerve conduction study and an MRI of the lumbo-sacral spine and prescribed pain medication. MDOC med. rec. 502. Medical records and deposition testimony establish that Dr. Williams continued to examine and treat Watts for back and leg pain for the seven months following the May 2013 treatment. On July 1, 2013, Dr. Williams examined Watts, ordered a second MRI, and determined the source of pain to be a bulging disc. Williams then met with Watts, informed him that he suffered from disc damage, and prescribed Ultram (a pain reliever). Depo. 38-39, 60-61. When Ultram seemed not to help, Williams prescribed Vicodin, a powerful narcotic pain reliever, and Neurontin, a central neuropathic pain reliever. Depo. 63-65. Williams also instructed the staff at the Marshall County Correctional Facility to arrange for Watts to visit a neurosurgeon. Depo. 66. Initially the defendants sent Watts to a neurologist, rather than a neurosurgeon, but later sent him to a neurosurgeon when Dr. Williams clarified his order. Williams' affidavit, para. 6. On September 23, 2013, Dr. Stallworth ordered a back brace for Watts, and Watts also received crutches after seeing a doctor in Corinth. Depo. 77-78. On October 1, 2013, Williams saw Watts about complaints that the medications were not providing sufficient relief for his back pain. Depo. 78-79. Watts visited a neurosurgeon on October 3, 2013; then Williams saw Watts again on October 11, 2013, for complaints of back pain. Depo. 83. Williams noted, "Overall assessment chronic back pain – scheduled for surgery. Overall plan f/u prn. Updated

medications: Xanaflex, Ibuprofen and Neurontin." *Id.*, partial medical chronology (setting forth all of Watts' visits with Dr. Williams). When Watts visited the neurosurgeon, Dr. Carl Bevering, the doctor first prescribed only physical therapy for the back and leg pain. Depo. 82, Dr. Bervering's records. When the physical therapy did not relieve Watts' symptoms, Dr. Bevering performed disc surgery in January 2014. Depo. 93-95. Even after the surgery, Watts complains of leg and back pain (of which he had complained for years), and also problems with balance. Depo. 93-95.

In his response to the defendants' motions for summary judgment, Watts alleges that he received medical treatment, but that it was inadequate. He quibbles with the timing of the treatment and its exact nature, but does not dispute that he received treatment for the ailments of which he complained, up to and including surgical correction.

### Denial of Medical Treatment

Watts alleges that the defendants failed to provide adequate medical care for his back and leg pain, which was ultimately determined to be caused by a bulging disc. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

### Claims Against Dr. Williams

As set forth above, the defendants provided Watts with medical treatment for his leg and back problems on an ongoing basis – from the time he first complained through surgery to relieve his symptoms. Though at one point there appears to have been some confusion by prison officials as to the type of doctor Watts needed (neurologist or neurosurgeon), Watts has provided no proof that the error rose to the level of deliberate indifference. Watts simply disagrees with the course of treatment and is understandably disappointed with the outcome, but his disagreement and the poor outcome do not rise to the level of a constitutional violation for denial of adequate medical care. For this reason, the motion by Dr. Williams for summary judgment will be granted and judgment entered in his favor.

### Claims Against Warden Timothy Outlaw

Watts' claims against Warden Outlaw are similarly without merit. On June 3, 2013, shortly after Watts' back and leg symptoms worsened, he sent a request form to Warden Timothy Outlaw seeking additional medical treatment. Watts has no idea what action Outlaw may have taken

regarding the request. During this time, Watts also submitted numerous requests for medical treatment to the medical staff at MCCF. On June 6, 2013 – three days after requesting that Warden Outlaw arrange for additional medical treatment – Watts visited Dr. Stallworth. Depo. 57-58. As set forth above, the visit with Dr. Stallworth was part of an ongoing and comprehensive effort to treat Watts for back and leg pain. Warden Outlaw eventually (on September 17, 2013) responded in writing to Watts' June 3, 2013, request for additional medical treatment, noting correctly that Watts was being treated on a consistent basis and waiting to hear from a neurosurgeon. Warden Outlaw is not a doctor, takes no part in examination, diagnosis, or treatment of medical problems, and was never present during Watts' examination or treatment. Though Warden Outlaw took over three months to respond to Watts' request for additional treatment, Watts was, indeed, provided medical treatment upon his request. As such, Warden Timothy Outlaw's motion for summary judgment will be granted, and judgment will be entered for him as to the plaintiff's claims that Outlaw denied him adequate medical treatment.

## Conclusion

In sum, the defendants motions [57], [59] for summary judgment will be granted in all respects, and judgment will be entered for the defendants.

**SO ORDERED**, this, the 8th day of October, 2014.

>**/s/ MICHAEL P. MILLS**
>**UNITED STATES DISTRICT JUDGE**
>**NORTHERN DISTRICT OF MISSISSIPPI**